# Exhibit A

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CA No. 1781-CV-03719

IOANA CONLEY and ALEXANDER
CONLEY on behalf of themselves and all
others similarly situated,

     Plaintiffs,

     vs.

ROSELAND RESIDENTIAL TRUST and
NWP SERVICES CORPORATION,

     Defendants.



### PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Ioana Conley and Alexander Conley ("The Conleys" or "Tenants") hereby bring this action on behalf of themselves and all other similarly situated individuals against Defendant, Roseland Residential Trust ("Roseland") and NWP Services Corporation ("NWP") (collectively "Defendants")[1] to recover damages from Defendants and to enjoin the unfair, deceptive and unlawful practices complained of herein.

The Conleys claim that the acts and omissions of Defendants, including the terms and conditions of Roseland's Rental Agreements, violate certain Massachusetts laws and regulations.

More precisely, the Conleys allege that Defendants purposefully and knowingly violated the provisions of: (1) M.G.L. c. 186, § 22; (2) 105 CMR 410.354(c); (3) 105 CMR 410.354(d); and (4) 940

---

[1] Defendants' acts and/or omissions as alleged herein, relate to Roseland and/or NWP's actions, including but not limited to NWP's actions as an agent of Roseland.

CMR 7.07(16) by charging for, and collecting, impermissible amounts of monies for submetered gas, water and sewer services.

The Conleys also allege Roseland has committed numerous violations of M.G.L. c. 186, § 15B stemming from Roseland's failure to pay interest owed to tenants in relation to their security deposits as required by Massachusetts law; and further, that Roseland violates M.G.L. c. 186, § 15B by requiring tenants to pay costs associated with unlawful move-in fees (such as the costs of a cashier's check) prior to tenancy.

The Conleys contend that Defendants' violations of: M.G.L. c. 186, § 22; 105 CMR 410.354(c); 105 CMR 410.354(d); 940 CMR 7.07(16); and/or M.G.L. c. 186, § 15B constitute violations of M.G.L. c. 93A.

The Conleys contend that Defendants have treated numerous similarly situated tenants in the unlawful manner described above, and further that such unlawful practices were committed willfully, knowingly and/or in bad faith.

## THE PARTIES

1. Plaintiff, Ioana Conley, is a resident of Malden, Massachusetts.

2. Plaintiff, Alexander Conley, is a resident of Malden, Massachusetts.

3. Defendant, Roseland, is a New Jersey organization which maintains a corporate office in Malden, Massachusetts. At all times relevant hereto, Roseland was in the business of owning, operating and/or managing residential properties throughout the Commonwealth of Massachusetts.[2]

---

[2] Roseland is defined to also include its predecessors, subsidiaries, assignees and/or assigns, including but not limited to, Roseland LR Services, LLC. Further, this action is filed in relation to all of the acts and omissions (and liability therefore) for all of Roseland's predecessors, subsidiaries, assignees and/or assigns.

4. Defendant, NWP Services Corporation, is a Texas Corporation which maintains a corporate office in Richardson Texas. NWP maintains a Registered Agent in Boston, Massachusetts. At all times relevant hereto, NWP was in the business of submetering gas, water and sewer services in residential rental properties throughout the Commonwealth of Massachusetts.[3]

## JURISDICTION AND VENUE

5. This court has personal jurisdiction over Roseland as it maintains a corporate office in Malden, Massachusetts. This Court also has personal jurisdiction over Roseland by virtue of its transactions, marketing, advertising and/or conducting trade/business throughout the Commonwealth at all times relevant hereto.

6. This court has personal jurisdiction over NWP as it maintains a registered agent in Boston, Massachusetts. This court also has personal jurisdiction over NWP by virtue of its transactions, marketing, advertising, billing and/or conducting trade/business throughout the Commonwealth at all times relevant hereto.

7. Upon information and belief, this Court has jurisdiction over the claims contained herein as they relate to the Conleys and the putative class because the claims for damages exceed twenty-five thousand dollars ($25,000.00).

8. Venue in this matter is proper as Roseland maintains a corporate office located in Middlesex County, Massachusetts and the dispute arises from the Defendants' business practices in Middlesex County, Massachusetts.

---

[3] NWP is defined to also include its predecessors, subsidiaries, assignees and/or assigns, including but not limited to, Realpage Utility Management, Inc. Further, this action is filed in relation to all of the acts and omissions (and liability therefore) for all of NWP's predecessors, subsidiaries, assignees and/or assigns.

## FACTUAL ALLEGATIONS

9. On or about June 10, 2014, Ioana Conley entered into a residential rental agreement/lease for an apartment at the Chase at Overlook Ridge, 6 Quarry Lane, Apt. 4409, Malden, MA 02148 ("Tenants' Residence").[4]

10. The terms and conditions of the 2014 Rental Agreement made clear that the rights and remedies of the parties thereto were/are controlled by M.G.L. c. 186 and M.G.L. c. 239.

11. The 2014 Rental Agreement's provisions are controlled by M.G.L. c. 186 and M.G.L. c. 239.

12. On or about September 27, 2016, Ioana Conley and Alexander Conley entered into a residential rental agreement/lease for an apartment at the Chase at Overlook Ridge. See, **Exhibit 1** (*2016 Rental Agreement*).[5]

13. On or about September 27, 2016, the Conleys renewed the residential rental agreement/lease for Tenants' Residence.

14. Throughout the Conleys' tenancy, Roseland contracted with NWP Services Corporation to bill the Conleys for submetered utilities.

15. At all times relevant hereto, Roseland was engaged in trade and/or commerce as defined by M.G.L. c. 93A.

16. At all times relevant hereto, NWP was engaged in trade and/or commerce as defined by M.G.L. c. 93A.

17. On or about December 22, 2017, the Conleys, through Counsel, sent Roseland the requisite M.G.L. c. 93A, § 9(3) class-wide demand.

---

[4] At the time of signing the lease on June 10, 2014 and the subsequent lease on September 27, 2016, Ioana Conley went by her maiden name, Ioana Aprodu.

[5] Alexander Conley was placed on the lease between the 2014 Rental Agreement and the 2016 Rental Agreement. Ioana Conley resided at 16 Quarry Lane, Apt. 4409, Malden, MA 02148 continuously since the inception of the 2014 Rental Agreement.

18. The Conleys' M.G.L. c. 93A, § 9(3) class-wide demand to Roseland sought relief for the Conleys and all other similarly situated tenants.

19. On or about January 26, 2018, Roseland, through counsel, responded to the Conleys' M.G.L. c. 93A, § 9(3) class-wide demand.

20. Roseland's response to the Conleys' M.G.L. c. 93A, § 9(3) class-wide demand was unreasonable.

21. Roseland's response to the Conleys' M.G.L. c. 93A, § 9(3) class-wide demand was made in bad faith.

22. On or about December 21, 2017, the Conleys, through Counsel, sent NWP the requisite M.G.L. c. 93A, § 9(3) class-wide demand.

23. The Conleys' M.G.L. c. 93A, § 9(3) class-wide demand to NWP sought relief for the Conleys and all other similarly situated tenants.

24. On or about February 12, 2018, NWP, through counsel, responded to the Conleys' M.G.L. c. 93A, § 9(3) class-wide demand.

25. NWP's response to the Conleys' M.G.L. c. 93A, § 9(3) class-wide demand was unreasonable.

26. NWP's response to the Conleys' M.G.L. c. 93A, § 9(3) class-wide demand was made in bad faith.


**Factual Allegations Relating to Submetering Claims**

27. During the course of the Conleys' tenancy, Defendants billed the Conleys for submetered gas, water and sewer services. See e.g., **Exhibit 2** (*October 2016 Invoice*); **Exhibit 3** (*December 2016 Invoices*); **Exhibit 4** (*January 2017 Invoice*); **Exhibit 5** (*February 2017 Invoice*); **Exhibit 6** (*March 2017 Invoice*); **Exhibit 7** (*April 2017 Invoice*); **Exhibit 8** (*May 2017 Invoice*); **Exhibit 9** (*June 2017 Invoice*) **Exhibit 10** (*July 2017 Invoice*); **Exhibit 11** (*August 2017 Invoice*); and **Exhibit 12** (*December 2017 Invoice*).

28. The terms and conditions of the 2014 Rental Agreement and the 2016 Rental Agreement ("Rental Agreements") made clear that the rights and remedies of the parties thereto were/are controlled by M.G.L. c. 186 and M.G.L. c. 239.

29. The Rental Agreements provisions are controlled by M.G.L. c. 186 and M.G.L. c. 239.

30. Roseland is the Conleys' residential landlord.

31. Roseland contracted with NWP to submeter water, sewer and gas provided to Tenants' Residence.

32. NWP is Roseland's agent.

### Factual Allegations Relating to Gas Submetering Claims

33. Section 13(a) of the Rental Agreements states in pertinent part:

> The consumption of gas for heat and hot water shall be separately metered to the Apartment by Owner using the Energy Cost Allocation system ... "Gas Heat Charge" if applicable, refers to an allocated share of the cost of gas used to heat the Resident's Apartment. The Resident's gas furnace is monitored by an Energy Cost Allocation system to determine the amount of time, each monthly billing period, that gas is combusted by the furnace to heat the Apartment ... The Owner's monthly cost to heat the Resident's Apartment is allocated to the Resident based on the recorded time of gas combustion for that Resident's gas furnace multiplied by the gas input rating for that Resident's gas furnace. The gas used to heat vacant apartments and common areas of the building (if any) is monitored and allocated by exactly the same method and is paid for by the Owner.

34. During their tenancy, the Conleys have been required to make monthly payments for submetered gas services.

35. Tenants' Residence does not have a separate meter for gas which serves only that dwelling unit.

36. Tenants' Residence does not have a separate meter for gas which is installed, inspected, maintained, and read by a utility company subject to the jurisdiction of the Massachusetts Department of Public Utilities.

37. Defendants installed and maintained a submeter for gas at Tenants' Residence.

38. Defendants billed the Conleys monthly in accordance with the Rental Agreements terms for submetered gas services.

39. The Conleys paid Defendants for submetered gas services.

40. Defendants received payments from the Conleys for submetered gas services.

41. Defendants received benefit from the Conleys payment of submetered gas services.

42. 105 CMR 410.354(c) states "[T]he owner shall install and maintain wiring and piping so that any such electricity or gas used in the dwelling unit is metered through meters which serve only such dwelling unit".

43. The submetering of gas services in the manner set forth in the Residential Agreements is a violation of 105 CMR 410.354(c).

44. 105 CMR 410.354(c) prohibits a landlord from requiring any tenant or prospective tenant to pay any amount for gas or electricity that is submetered.

45. There is a regulatory prohibition against "reselling of utilities or submetering" which that agency considers inconsistent with enforcement of regulatory requirements that ensure accuracy and protect consumers from excessive or erroneous charges.

46. It is prohibited for a residential landlord to charge tenants for hot water and/or heat used where the means of measuring gas output to such heat is based on a system which is: (a) not provided by any authorized public utility company; and (b) monitored or read by an authorized public utility company.

47. Defendants knowingly and willfully required that the Conleys pay unlawful submetered gas services throughout their tenancy.

48. Defendants knowingly and willfully collected from the Conleys' payment for unlawfully submetered gas services.

7

49. Defendants have acted in the manner set forth herein with respect to numerous similarly situated tenants.

50. Defendants continue to knowingly and willfully require that tenants pay unlawful charges for submetered gas services.

## Factual Allegations Relating to Water and Sewer Submetering Claims

51. Section 13(b) of the 2014 Rental Agreement states: "Water and Sewer Charge if applicable, refers to the cost of water and sewer used in Resident's Apartment."

52. Section 13(b) of the 2014 Rental Agreement states:

> Resident's Apartment is monitored by a utility grade water meter to measure the amount of water in the Apartment. The Owner's total water consumption is recorded by master water meters installed by the municipality. The total water consumption is allocated to Resident's Apartment and billed based on the actual water use. Water and sewer use charges are billed to Resident in accordance with Mass. General Law c. 186, sec. 22.

53. Section 13(b) of the 2016 Rental Agreement states: "Water and Sewer Charge if applicable, refers to the cost of water and sewer used in Resident's Apartment."

54. Section 13(b) of the 2016 Rental Agreement states:

> Resident's Apartment is monitored by a utility grade water meter to measure the amount of water in the Apartment. The Owner's total water consumption is recorded by master water meters installed by the municipality. The total water consumption is allocated to Resident's Apartment and billed based on the actual water use. Water and sewer use charges are billed to Resident in accordance with Mass. General Law c. 186, sec. 22.

55. Tenants' Residence does not have a separate meter for water and sewer usage which serves only that dwelling unit.

56. Tenants' Residence does not have a separate meter for water and sewer usage which is installed, inspected, maintained, and read by a utility company subject to the jurisdiction of the Massachusetts Department of Public Utilities.

57. During the Conleys' tenancy, Roseland directed NWP to bill the Conleys for submetered water and sewer service at Tenants' Residence.

58. The Conleys paid Defendants for submetered water and sewer service.

59. Defendants received payments from the Conleys for submetered water and sewer service.

60. Defendants received benefit from the Conleys payment of submetered water and sewer service.

61. M.G.L. c. 186, § 22(f) states:

> A landlord may not charge the tenant separately, nor allow tenant to be charged separately, for submetered water usage unless the tenant has signed a written rental agreement that clearly and conspicuously provides for such separate charge and that fully discloses in plain language the details of the water submetering and billing arrangement between the landlord and the tenant.

62. M.G.L. c. 186, § 22(f) states:

> Each bill for submetered water usage shall clearly set forth all charges and all other relevant information, including, but not limited to, the current and immediately preceding submeter readings and the date of each such reading, the amount of water consumed since the last reading, the charge per unit of water, the total charge and the payment due date.

63. 105 CMR 410.354(d) mandates that a landlord who intends to separately bill the occupant for water or sewer services, ... (3) "shall have a licensed plumber sign the certificate certifying that the water submetering devices and ultra-low-flush toilets have been installed in accordance with accepted plumbing standards and the requirements of M.G.L. c. 186, § 22, and shall attach appropriate documentation to verify the services provided by the licensed plumber"; (4) "shall also provide a copy of the certificate to the occupants of each dwelling unit with the written letting agreement that describes the details of the water submetering and water billing arrangements".

64. Submetering of water and sewer charges billed to the Conleys in the manner set forth in the Residential Agreements constitutes a violation of M.G.L. c. 186, § 22(f).

65. The submetering of water and sewer charges billed to the Conleys in the manner set forth in the Residential Agreements constitutes a violation of 105 CMR 410.354.

66. M.G.L. c. 186, § 22(f) requires written rental agreements clearly and conspicuously provide for such separate charge and that fully discloses in plain language the details of the water submetering and billing arrangement between the landlord and the tenant

67. The Rental Agreements do not include any third-party services billing company information.

68. The Rental Agreements do not state that a third-party services company would determine and bill for submetered water and sewage usage.

69. Roseland failed to clearly and conspicuously fully disclose in plain language the details of the water submetering and billing arrangement between the landlord and the Conleys in violation of M.G.L. c. 186, § 22(f).

70. The Conleys received numerous bills for submetered gas, water and sewage services without the current and immediately preceding submetered readings in violation of M.G.L. c. 186, § 22(f).

71. The Conleys received numerous bills for submetered gas, water and sewage services without the date of each such reading in violation of M.G.L. c. 186, § 22(f).

72. The Conleys never received a signed certificate certifying that the water submetering devices and ultra-low-flush toilets had been installed in accordance with accepted plumbing standards and the requirements of M.G.L. c. 186, § 22, attached with the appropriate documentation to verify the services provided by the licensed plumber with the written letting agreement in violation of 105 CMR 410.354(d).

73. A landlord or its agent are prohibited to charge tenants for submetered water and sewer services if the mandates and prerequisites of M.G.L. c. 186, § 22 are not followed.

74. Defendants failed to comply with the mandates and prerequisites of M.G.L. c. 186, § 22 before billing the Conleys for water and sewer service.

75. A landlord or its agent are prohibited to charge tenants for submetered water and sewer services if the mandates and prerequisites of 105 CMR 410.354 are not followed.

76. Defendants failed to comply with the mandates and prerequisites of 105 CMR 410.354 before billing the Conleys for water and sewer service.

77. Defendants knowingly and willfully required that the Conleys pay unlawful charges for submetered water and sewer services throughout their tenancy.

78. Defendants knowingly and willfully collected from the Conleys payment for unlawfully submetered water and sewer services throughout their tenancy.

79. Defendants have acted in the manner set forth herein with respect to numerous other similarly situated tenants at residential facilities.

80. Defendants continue to knowingly and willfully require that tenants pay unlawful charges for submetered water and sewer services.

## Factual Allegations Relating to Security Deposit Claims

81. At the inception of the lease, Ioana Conley paid $1,000.00 to Roseland as a security deposit ("Security Deposit").

82. Roseland accepted Ioana Conley's $1,000.00 Security Deposit.

83. M.G.L. c. 186, § 15B(3)(b) required that Roseland pay Tenants' interest, beginning with the first day of the second year of tenancy, at the rate of five percent (5%) per year, or other such lesser amount of interest as has been received from the bank where the Security Deposit has been held or provide the Tenants with a notification that the Tenants may deduct the interest from the Tenants' next rental payment.

84. M.G.L. c. 186, § 15B(3)(b) required that at the end of each year of tenancy Roseland give or send to the tenant from whom a security deposit has been received a statement which shall indicate the name and address of the bank in which the security deposit has been placed, the amount of the deposit, the account number, and the amount of interest payable by such lessor to the tenant. The lessor shall at the same time give or send to each such tenant the interest which is due or shall include with the statement required by this clause a notification that the tenant may deduct the interest from the tenant's next rental payment.

85. Roseland did not pay interest at the rate of five per cent per year, or other such lesser amount of interest as has been received from the bank where the Security Deposit has been held, to Ioana Conley and/or the Conleys at the end of each year of the tenancy.

86. At the end of each year of the Ioana Conley's and/or the Conleys' tenancy, Roseland failed to give or send to Ioana Conley and/or the Conleys a statement which indicated the name and address of the bank in which the Security Deposit had been placed, the amount of the monies, the account number, and the amount of interest payable by Roseland.

87. At the end of each year of tenancy, Roseland failed to give or send to the Ioana Conley and/or the Conleys a statement which indicated the amount of interest on the Security Deposit payable by Roseland.

88. At the end of each year of tenancy, Roseland failed to give or send to Ioana Conley and/or the Conleys the interest which is due on Security Deposit or notify Ioana Conley and/or the Conleys that they may deduct the interest from the next rental payment.

89. Roseland knowingly and willfully did not comply with the mandates of M.G.L. c. 186, § 15B by failing to give or send Ioana Conley and/or the Conleys the interest which was due on their Security Deposit.

90. Roseland has acted in the manner set forth herein with respect to numerous other similarly situated tenants in its residential facilities.

## Factual Allegations Relating to Unlawful Fee Claims

91. At or before the inception of Ioana Conley's lease, she was required to tender the payment of a one-time refundable Move-In Fee ("Move-In Fee").

92. Roseland required that the Move-In Fee be paid by certified check, money order or another certified tender.

93. Obtaining a certified check, money order or other certified tender caused Ioana Conley to pay an amount of money in addition to (i) rent for the first full month of occupancy; (ii) rent for the last full month of occupancy calculated at the same rate as the first month; (iii) a security deposit equal to the first month's rent; or (iv) the purchase and installation cost for a key and lock.

94. Ioana Conley paid the Move-In Fee at or before the inception of the lease.

95. Roseland accepted the $500.00 Move-In Fee at or before the inception of the lease.

96. Roseland returned the $500.00 Move-In Fee several days after Ioana Conley moved into her apartment.

97. The Move-In Fee constituted an amount in excess of: (i) rent for the first full month of occupancy; (ii) rent for the last full month of occupancy calculated at the same rate as the first month; (iii) a security deposit equal to the first month's rent; or (iv) the purchase and installation cost for a key and lock.

98. M.G.L. c. 186, § 15B(1)(b) prohibits a landlord, prior to or at the inception of a resident's tenancy, from requiring any tenant or prospective tenant, to pay any amount in excess of the enumerated categories in clauses (i) through (iv) thereof.

99. Roseland knowingly and willfully required that Ioana Conley pay an unlawful Move-In Fee before or at the inception of the tenancy

100. Roseland knowingly and willfully collected from Ioana Conley the payment of an unlawful Move-In Fee before or at the inception of the tenancy.

101. Roseland has acted in the manner set forth herein with respect to numerous other similarly situated tenants.

102. Roseland continues to knowingly and willfully require that tenants and/or prospective tenants pay an unlawful Move-In Fees before or at the inception of their tenancy.

## CLASS ALLEGATIONS

103. The Conleys repeat and re-allege the allegations set forth above.

104. The Conleys bring this class action, on behalf of themselves and all other similarly situated tenants in accordance with Massachusetts Rule of Civil Procedure 23 and M.G.L. c. 93A.

105. For the purposes of this action the class ("Class" or "Class Members") shall be defined as:

All current and former residential tenants who:

A. Were charged for gas, water and/or sewer submetered services by Roseland and/or NWP; and/or

B. Did not receive interest on their Security Deposits at the beginning with the first day of the second year of tenancy (or additional years of tenancy) or have not received a yearly Security Deposit notification as described by M.G.L. c. 186, § 15B(3)(b); and/or

C. At or prior to the inception of tenancy paid any fee not expressly enumerated by M.G.L. c. 186, § 15B(1)(b).

106. The members of the Class are so numerous that joinder of all members would be impracticable.

107. The Conleys' claims are typical of the claims of other members of the Class, as all members of the Class have been similarly affected by Defendants' acts and practices as described herein.

108. The Conleys will fairly and adequately protect the interests of the Class and is represented by counsel experienced in complex class action litigation.

109. Common questions of law and fact exist and predominate over any questions of law or fact which may affect only individual Class members. Common questions of law and fact include:

A.  Whether Defendants impermissibly billed residents for submetered gas services;

B.  Whether Defendants were/are permitted to bill for submetered gas services;

C.  Whether Defendants impermissibly billed residents for submetered water or sewage services;

D.  Whether Defendants were/are permitted to bill for submetered water or sewer services;

E.  Whether the acts and practices of Defendants described herein constitute violations of: 105 CMR 410.354(c); 105 CMR 410.354(d); M.G.L. c. 186, § 22; 940 CMR 7.07(16); and/or M.G.L. c. 93A;

F.  Whether the acts and practices of Roseland described herein constitute violations of: M.G.L. c. 186, § 15B;

G.  Whether the acts and practices of Defendants constitute violations of the common-law principals of: negligent misrepresentation; and/or unjust enrichment;

H.  The applicable statute of limitations to be determined on any or all of the successful causes of action;

I.  Whether Defendants should be permanently enjoined from continuing the practices which are the subject matter of this civil action; and

J.  Whether the Conleys and the Class are entitled to damages, and if so the proper measure of damages.

110. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since:

A.     The financial harm suffered by individual class members is such that it would be economically unfeasible for them to individually litigate their claims;

B.     The factual and legal issues common to all class members far outweigh any individual questions;

C.     The prosecution of separate lawsuits by individual class members would entail the risk of inconsistent and conflicting adjudications;

D.     Class Members are ascertainable through Defendants' records;

E.     Class Members' damages are ascertainable through Defendants' records;

F.     There will be no unusual or extraordinary management difficulties in administering this case as a class action.

111. A class action will foster economies of time, effort and expense to ensure uniformity of decisions, presenting the most efficient manner of adjudicating the claims set forth herein.

### COUNT I
### The Conleys v. Defendants
### Unjust Enrichment
### (Submetering of Gas)

112. The Conleys repeat and re-allege the allegations set forth above.

113. Defendants wrongfully collected monies for submetered gas services from the Conleys.

114. Defendants have been unjustly enriched as a result of the collection monies for submetered gas services from the Conleys.

115. Justice requires that the wrongfully collected money be returned to the Conleys.

116. Defendants wrongfully collected monies for submetered gas services from Class Members.

117. Defendants have been unjustly enriched as a result of collecting submetered gas services charges from Class Members.

118. Justice requires that the wrongfully collected money be returned to Class Members.

**WHEREFORE**, the Conleys and the Class respectfully request that this Court enter Judgment against Defendants for unjust enrichment and award damages to adequately compensate the Conleys and the Class.

## COUNT II
### The Conleys v. Defendants
### Negligent Misrepresentation
#### (Submetering of Gas and Heat)

119. The Conleys repeat and re-allege the allegations set forth above.

120. The Conleys paid for submetered gas services during their tenancy.

121. Defendants collected monies from the Conleys for submetered gas services during their tenancy.

122. Defendants' representations as to the permissible nature of payment for submetered gas services constituted a false statement of material fact.

123. The Conleys relied upon Defendants' misrepresentations.

124. Defendants' misrepresentation as to the permissible nature of payment for submetered gas services caused the Conleys to act to their financial detriment.

125. Class Members paid for submetered gas services during their tenancy.

126. Defendants' collected monies from Class Members for submetered gas services during Class Members' tenancies.

127. Defendants' misrepresentation as to the permissible nature of payment for submetered gas services to Class Members constituted a false statement of material fact.

128. Class Members relied upon Defendants' misrepresentations.

129. Defendants' misrepresentation as to the permissible nature of payment for submetered gas services caused Class Members to act to their financial detriment.

130. As a result of Defendants' misrepresentations, the Conleys and the Class have suffered damages, including but not limited to financial detriment.

131. As a result of Defendants' misrepresentations, the Conleys and the Class have suffered damages, including but not limited to the amount that Defendants impermissibly collected in consideration for submetered gas services.

WHEREFORE, the Conleys respectfully requests that this Court enter judgment against Defendants for their misrepresentations and award damages to adequately compensate the Conleys and the Class.

**COUNT III**
**The Conleys v. Defendants**
**Violation of M.G.L. c. 93A, §2**
**For violations of 105 CMR 410.354(c)**
**(Submetering of Gas and Heat)**

132. The Conleys repeat and re-allege the allegations set forth above.

133. Massachusetts has enacted a regulatory prohibition against "reselling of utilities or submetering" which is consistent with enforcement of regulatory requirements that ensure accuracy and protect consumers from excessive or erroneous charges, as expressed in 105 CMR 410.354(c).

134. 105 CMR 410.354(c) requires that a residential landlord "shall install and maintain wiring and piping so that any such electricity or gas used in the dwelling unit is metered through meters which serve only such dwelling unit."

135. Roseland failed to install and maintain wiring and piping so that any such gas used in the dwelling unit was metered through meters which served only the Conleys' rental unit.

136. 105 CMR 410.354(c) prohibits a landlord from requiring any tenant or prospective tenant from paying any amount for gas that is submetered.

18

137. 105 CMR 410.354(c) prohibits a residential landlord from charging tenants for hot water and/or heat used where the means of measuring gas output to such heat is based on a system which is: (a) not provided by any authorized public utility company and (b) maintained and read solely by an authorized public utility company.

138. Defendants knowingly and willfully required that the Conleys and Class Members pay unlawful submetered gas services throughout their tenancies.

139. Defendants knowingly and willfully collected from the Conleys and Class Members the payment of an unlawfully submetered gas services.

140. Defendants' acts and omissions as set forth herein constitute violations of 105 CMR 410.354(c).

141. Defendants' failure to comply with the applicable provisions of 105 CMR 410.354(c) constitute an unfair and deceptive business practice.

142. Defendants' failure to comply with the applicable provisions 105 CMR 410.354(c) constitutes a violation of M.G.L. c. 93A, § 2.

143. Defendants' acts and practices as described herein were committed willfully, knowingly and/or in bad faith.

144. As a result of Defendants' violations of 105 CMR 410.354(c) and M.G.L. c. 93A, § 2 (as set forth herein), the Conleys and Class Members have been harmed.

145. Defendants' violations of 105 CMR 410.354(c) have caused the Conleys and Class Members harm, including financial harm.

146. As a result of Defendants' violations 105 CMR 410.354(c), the Conleys have suffered damages, including but not limited to, the amount paid for unlawfully collected submetered gas services with accruing interest thereon.

147. As a result of Defendants' violations of 105 CMR 410.354(c) Class Members have suffered damages, including but not limited to, the amount collected for unlawfully collected submetered gas services with accruing interest thereon.

   **WHEREFORE**, the Conleys respectfully request that this Court enter Judgment against Defendants for their violations of the 105 CMR 410.354(c) and M.G.L. c. 93A, and further, that the Court award, multiple damages to compensate the Conleys and the Class, and that the Court add thereto costs and attorneys' fees.

**COUNT IV**
**The Conleys v. Defendants**
**Violation of M.G.L. c. 93A, §2**
**For violations of 940 CMR 7.07(16)**
**(Submetering of Gas and Heat)**

148. The Conleys repeat and re-allege the allegations set forth above.

149. 940 CMR 7.07(16) states it is an unfair or deceptive act or practice to engage in collecting or attempt to collect "any amount (including interest, fees, charges or expenses incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

150. Defendants knowingly and willfully dunned the Conleys and Class Members for submetered gas services throughout their tenancies which amounts were not permitted and/or authorized by law.

151. Defendants knowingly and willfully required that the Conleys and Class Members pay for unlawfully submetered gas services throughout their tenancies.

152. Defendants collected and/or attempted to collect monies for unlawfully submetered gas services from the Conleys and the Class.

153. Defendants collected and/or attempted to collect monies for unlawfully submetered gas services from the Conleys and the Class without a valid agreement creating the debt.

154. Defendants' acts and omissions as set forth herein constitute violations of 940 CMR 7.07(16).

155. Defendants' failure to comply with the applicable provisions of 940 CMR 7.07(16) constitute an unfair and deceptive business practice.

156. Defendants' failure to comply with the applicable provisions 940 CMR 7.07(16) constitutes a violation of M.G.L. c. 93A, § 2.

157. Defendants' acts and practices as described herein were committed willfully, knowingly and/or in bad faith.

158. As a result of Defendants' violations of 940 CMR 7.07(16) and M.G.L. c. 93A, § 2 (as set forth herein), the Conleys and Class Members have been harmed.

159. Defendants' violations of 940 CMR 7.07(16) have caused the Conleys and Class Members harm, including financial harm.

160. As a result of Defendants' violations 105 940 CMR 7.07(16), the Conleys have suffered damages, including but not limited to, the amount paid for unlawfully submetered gas services with accruing interest thereon.

161. As a result of Defendants' violations of 940 CMR 7.07(16) Class Members have suffered damages, including but not limited to, the amount paid for unlawfully submetered gas services with accruing interest thereon.

**WHEREFORE**, the Conleys respectfully request that this Court enter Judgment against Defendants for their violations of the 940 CMR 7.07(16) and M.G.L. c. 93A, and further, that the Court award, multiple damages to compensate the Conleys and the Class, and that the Court add thereto costs and attorneys' fees.

## COUNT V
### The Conleys v. Defendants
### Unjust Enrichment
#### (Submetering of Water and Sewer Services)

162. The Conleys repeat and re-allege the allegations set forth above.

163. Defendants wrongfully collected monies for submetered water and sewer services from the Conleys.

164. Defendants have been unjustly enriched as a result of the unlawful collection monies for submetered water and sewer services from the Conleys.

165. Justice requires that the wrongfully collected money be returned to the Conleys.

166. Defendants wrongfully collected monies for submetered water and sewer services from Class Members.

167. Defendants have been unjustly enriched as a result of unlawfully collecting submetered water and sewer services from Class Members.

168. Justice requires that the wrongfully collected money be returned to Class Members.

**WHEREFORE**, the Conleys and the Class respectfully request that this Court enter Judgment against Defendants for unjust enrichment and award damages to adequately compensate the Conleys and the Class.

## COUNT VI
### The Conleys v. Defendants
### Negligent Misrepresentation
#### (Submetering of Water and Sewer Services)

169. The Conleys repeat and re-allege the allegations set forth above.

170. The Conleys paid for submetered water and sewer services during their tenancy.

171. Defendants unlawfully collected monies from the Conleys for submetered water and sewer services.

172. Defendants' misrepresentation as to the permissible nature of collecting for submetered water and sewer services constituted a false statement of material fact.

173. The Conleys relied upon Defendants' misrepresentations and false statements of material fact.

174. Defendants' misrepresentation as to the permissible nature of collecting for submetered water and sewer services caused the Conleys to act to their financial detriment.

175. Class Members paid for submetered water and sewer services.

176. Defendants unlawfully collected monies from Class Members for submetered water and sewer services during Class Members' tenancies.

177. Defendants' misrepresentation as to the permissible nature of collecting for submetered water and sewer services to Class Members constituted a false statement of material fact.

178. Class Members relied upon Defendants' misrepresentations and false statements of material fact.

179. Defendants' misrepresentation as to the permissible nature of payment for submetered water and sewer services caused Class Members to act to their financial detriment.

180. As a result of Defendants' misrepresentations, the Conleys and the Class have suffered damages, including but not limited to financial detriment.

181. As a result of Defendants' misrepresentations, the Conleys and the Class have suffered damages, including but not limited to the amount that Defendants collected in consideration for submetered water and sewer services.

**WHEREFORE,** the Conleys respectfully requests that this Court enter judgment against Defendants for their misrepresentations and award damages to adequately compensate the Conleys and the Class.

**COUNT VII**
**The Conleys v. Defendants**
**Violation of M.G.L. c. 93A, §2**
**For violations of M.G.L. c. 186, § 22**
**(Submetering of Water and Sewer Services)**

182. The Conleys repeat and re-allege the allegations set forth above.

23

183. M.G.L. c. 186, § 22(f) only permits a residential landlord to charge a tenant for submetered water usage if the landlord meets all the perquisites and requirements set forth by the statute.

184. M.G.L. c. 186, § 22(f) only permits a residential landlord to charge a tenant for submetered water and sewer usage if: the "tenant has signed a written rental agreement that clearly and conspicuously provides for such separate charge and that fully discloses in plain language the details of the water submetering and billing arrangement between the landlord and the tenant."

185. Defendants failed to provide the Conleys and Class Members with a written rental agreement that clearly and conspicuously provides for such separate charge and that fully discloses in plain language the details of the water submetering and billing arrangement between the Roseland and the Conleys.

186. Defendants failed to provide the Conleys and Class Members with a signed certificate certifying that the water submetering devices utilized, and ultra-low-flush toilets had been installed in accordance with accepted plumbing standards and the requirements of M.G.L. c. 186, § 22, attached with the appropriate documentation to verify the services provided by the licensed plumber with the written letting agreement in violation of 105 CMR 410.354(d).

187. M.G.L. c. 186, § 22 states in pertinent part, "[e]ach bill for submetered water usage shall clearly set forth all charges and all other relevant information, including, but not limited to, the current and immediately preceding submeter readings and the date of each such reading, the amount of water consumed since the last reading, the charge per unit of water, the total charge and the payment due date.

188. Defendants failed to provide the Conleys and Class Members with bills for submetered water usage that clearly set forth all charges and all other relevant information, including, but not limited to, the current and immediately preceding submeter readings and the date of each such reading, the amount

of water consumed since the last reading, the charge per unit of water, the total charge and the payment due date.

189. Defendants' billing of the Conleys and Class Members for submetered water and sewer services constitute violations of M.G.L. c. 186, § 22.

190. Defendants' acts and omissions as set forth herein constitute violations of M.G.L. c. 186, § 22.

191. Defendants' failure to comply with the applicable provisions of M.G.L. c. 186, § 22 constitutes an unfair and deceptive business practice.

192. Defendants' failure to comply with the applicable provisions M.G.L. c. 186, § 22 constitutes a violation of M.G.L. c. 93A, § 2.

193. Defendants' acts and practices as described herein were committed willfully and/or knowingly and/or in bad faith.

194. As a result of Defendants' violations of M.G.L. c. 186, § 22 and M.G.L. c. 93A, § 2 (as set forth herein), The Conleys and Class Members have been damaged.

195. Defendants' violations of M.G.L. c. 186, § 22 have caused the Conleys and Class Members harm, including financial harm.

196. As a result of Defendants' violations of M.G.L. c. 186, § 22 the Conleys and Class Members have suffered damages, including but not limited to, the amount paid for unlawfully collected submetered water and sewer services with accruing interest thereon.

**WHEREFORE**, the Conleys respectfully request that this Court enter Judgment against Defendants' for their violations of the M.G.L. c. 186, § 22 and M.G.L. c. 93A, and further, that the Court award multiple damages to compensate the Conleys and the Class, and that the Court add thereto costs and attorneys' fees.

## COUNT VIII
### The Conleys v. Defendants
### Violation of M.G.L. c. 93A, §2
### For violations of 105 CMR 410.354(d)
### (Submetering of Water and Sewer Services)

197. The Conleys repeat and re-allege the allegations set forth above.

198. 105 CMR 410.354 et seq. only permits a landlord to charge a tenant for submetered water usage if the landlord meets all the perquisites and requirements set forth by the regulation.

199. 105 CMR 410.354(d) mandates that a landlord who intends to separately bill the occupant for water or sewer services, … (3) "shall have a licensed plumber sign the certificate certifying that the water submetering devices and ultra-low-flush toilets have been installed in accordance with accepted plumbing standards and the requirements of M.G.L. c. 186, § 22, and shall attach appropriate documentation to verify the services provided by the licensed plumber"; (4) "shall also provide a copy of the certificate to the occupants of each dwelling unit with the written letting agreement that describes the details of the water submetering and water billing arrangements".

200. Defendants failed to file the proper certificate and declaration as required by 105 CMR 410.354 ("Certificate") with the Department of Public Health, with the Board of Health or other appropriate agency under the pains and penalties of perjury, confirming that the Conleys and Class Members dwelling unit was in compliance with M.G.L. c. 186, § 22.

201. Defendants failed to provide, along with the Certificate to the Conleys and Class Members, appropriate documentation to verify the services required under M.G.L. c. 186, § 22 and 105 CMR 410.354 were provided by the licensed plumber.

202. Defendants failed to provide to The Conleys and Class Members a copy of the Certificate prior to billing for submetered water and sewer services.

203. Defendants' billing of the Conleys and Class Members for submetered water and sewer services constitute violations of 105 CMR 410.354 et seq.

204. Defendants' acts and omissions as set forth herein constitute violations of 105 CMR 410.354 et seq.

205. Defendants' failure to comply with the applicable provisions of 105 CMR 410.354 et seq. constituted an unfair and deceptive business practice.

206. Defendants' failure to comply with the applicable provisions 105 CMR 410.354 et seq. constituted a violation of M.G.L. c. 93A, § 2.

207. Defendants' acts and practices as described herein were committed willfully and/or knowingly and/or in bad faith.

208. As a result of Defendants' violations of 105 CMR 410.354 et seq. and M.G.L. c. 93A, § 2 (as set forth herein), the Conleys and Class Members have been damaged.

209. Defendants' violations of 105 CMR 410.354 et seq. have caused the Conleys and Class Members harm, including financial harm.

210. As a result of Defendants' violations of 105 CMR 410.354 et seq., the Conleys have suffered damages, including but not limited to, the amount paid for unlawfully collected submetered water and sewer services with accruing interest thereon.

211. As a result of Defendants' violations of 105 CMR 410.354 et seq., Class Members have suffered damages, including but not limited to, the amount unlawfully collected for submetered water and sewer services with accruing interest thereon.

**WHEREFORE,** the Conleys respectfully request that this Court enter Judgment against Defendants for their violations of the 105 CMR 410.354 et seq. and M.G.L. c. 93A, and further, that the Court award, multiple damages to compensate the Conleys and the Class, and that the Court add thereto costs and attorneys' fees.

## COUNT IX
### The Conleys v. Defendants
### Violation of M.G.L. c. 93A, §2
### For violations of 940 CMR 7.07(16)
### (Submetering of Water and Sewer Services)

212. The Conleys repeat and re-allege the allegations set forth above.

213. 940 CMR 7.07(16) states it is an unfair or deceptive act or practice to engage in collecting or attempt to collect "any amount (including interest, fees, charges or expenses incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

214. Defendants knowingly and willfully dunned the Conleys and Class Members for submetered water and sewer services throughout their tenancies which amounts were not permitted and/or authorized by law.

215. Defendants knowingly and willfully required that the Conleys and Class Members pay for unlawfully submetered water and sewer services throughout their tenancies.

216. Defendants collected and/or attempted to collect monies for unlawfully submetered water and sewer services from the Conleys and the Class.

217. Defendants collected and/or attempted to collect monies for unlawfully submetered water and sewer services from the Conleys and the Class without a valid agreement creating the debt.

218. Defendants' acts and omissions as set forth herein constitute violations of 940 CMR 7.07(16).

219. Defendants' failure to comply with the applicable provisions of 940 CMR 7.07(16) constitute an unfair and deceptive business practice.

220. Defendants' failure to comply with the applicable provisions 940 CMR 7.07(16) constitutes a violation of M.G.L. c. 93A, § 2.

221. Defendants' acts and practices as described herein were committed willfully, knowingly and/or in
bad faith.

222. As a result of Defendants' violations of 940 CMR 7.07(16) and M.G.L. c. 93A, § 2 (as set forth
herein), the Conleys and Class Members have been harmed.

223. Defendants' violations of 940 CMR 7.07(16) have caused the Conleys and Class Members harm,
including financial harm.

224. As a result of Defendants' violations 105 940 CMR 7.07(16), the Conleys have suffered damages,
including but not limited to, the amount paid for unlawful submetered water and sewer services with
accruing interest thereon.

225. As a result of Defendants' violations of 940 CMR 7.07(16) Class Members have suffered damages,
including but not limited to, the amount paid for unlawful collected submetered water and sewer
services with accruing interest thereon.

**WHEREFORE**, the Conleys respectfully request that this Court enter Judgment against
Defendants for their violations of the 940 CMR 7.07(16) and M.G.L. c. 93A, and further, that the Court
award, multiple damages to compensate the Conleys and the Class, and that the Court add thereto costs
and attorneys' fees.

**COUNT X**
**The Conleys v. Roseland**
**VIOLATION OF M.G.L. c. 186, § 15B(3)(b)**
**(Security Deposit Violations)**

226. The Conleys repeat and re-allege the allegations set forth above.

227. Roseland was/is required to fully comply with the mandates of M.G.L. c. 186, § 15B(3)(b) as they
apply to the handling of Security Deposits.

228. Roseland failed to pay the Conleys and Class Members, beginning with the first day of the second
. year of tenancy, interest at the rate of five percent (5%) per year, or other such lesser amount of

29

interest as has been received from the bank where the Security Deposit have been held or provide the Conleys and the Class Members with a notification that the Conleys and the Class Members may deduct the interest from their respective next rental payments as required by M.G.L. c. 186, § 15B(3)(b).

229. Roseland failed at the end of each year to give or send to the Conleys and the Class Members a statement which indicated the name and address of the bank in which the Security Deposit had been placed, the amount of the monies, the account number, and the amount of interest payable by Roseland as required by M.G.L. c. 186, § 15B(3)(b).

230. Roseland's handling of the Security Deposits collected from the Conleys and other Class Members as set forth herein constitute numerous willful and knowing violations of M.G.L. c. 186, § 15B(3)(b).

231. Roseland's violations of M.G.L. c. 186, § 15B entitled the Conleys and Class Members to the immediate return of their respective Security Deposits from Roseland.

232. Roseland's failure to comply with the provisions of M.G.L. c. 186, § 15B(3)(b) as set forth herein entitles the Conleys and Class Members to damages in an of such Security deposits (or balance thereof) to which the Conleys and the Class Members are entitled plus interest.

233. As a result of Roseland's violations of M.G.L. c. 186, § 15B(3)(b) as set forth herein, the Conleys and Class Members have suffered financial detriment.

234. As a result of Roseland's violations of M.G.L. c. 186, § 15B(3)(b) as set forth herein, the Conleys and Class Members have suffered damages, including but not limited to, failure to receive amounts due and owing and loss of use and interest thereon.

**WHEREFORE**, the Conleys respectfully request that this court enter Judgment against Roseland for its willful and knowing violations of M.G.L. c. 186, § 15B(3)(b), and further, that the Court award multiple damages, costs and attorneys' fees to adequately compensate the Conleys and the Class.

**COUNT XI**
**The Conleys v. Roseland**
**Violation of M.G.L. c. 93A, §2**
**For violations of M.G.L. c. 186, § 15B(3)(b)**
**(Security Deposit Violations)**

235. The Conleys repeat and re-allege the allegations set forth above.

236. M.G.L. c. 186, § 15B(3)(b) required that Roseland pay the Conleys interest, beginning with the first day of the tenancy, at the rate of five percent (5%) per year, or other such lesser amount of interest as has been received from the bank where the Security Deposit has been held or provide the tenant with a notification that the tenant may deduct the interest from the tenant's next rental payment.

237. M.G.L. c. 186, § 15B(3)(b) required that Roseland give or send to the tenant from whom a security deposit has been received a statement which shall indicate the name and address of the bank in which the security deposit has been placed, the amount of the deposit, the account number, and the amount of interest payable by such lessor to the tenant. The lessor shall at the same time give or send to each such tenant the interest which is due or shall include with the statement required by this clause a notification that the tenant may deduct the interest from the tenant's next rental payment.

238. Roseland did not pay interest at the rate of five per cent per year, or other such lesser amount of interest as has been received from the bank where the Security Deposit has been held, to the Conleys and the Class Members at the end of each year of the tenancy.

239. At the end of each year, Roseland failed to give or send to the Conleys and the Class Members a statement which indicated the name and address of the bank in which the Security Deposit had been placed, the amount of the monies, the account number, and the amount of interest payable by Roseland.

240. Roseland's acts and omissions as set forth herein constitute violations of M.G.L. c. 186, § 15B(3)(b).

241. Roseland's failure to comply with the applicable provisions of M.G.L. c. 186, § 15B(3)(b) constitute an unfair and deceptive business practice.

242. Roseland's failure to comply with the applicable provisions of M.G.L. c. 186, § 15B(3)(b) constitute a violation of M.G.L. c. 93A, § 2.

243. Roseland's acts and practices as described herein were committed willfully and/or knowingly and/or in bad faith.

244. As a result of Roseland's violations of M.G.L. c. 186, § 15B(3)(b) and M.G.L. c. 93A, § 2 (as set forth herein), the Conleys and Class Members have been damaged.

245. Roseland's violations of M.G.L. c. 186, § 15B(3)(b) have caused the Conleys and Class Members harm, including financial harm.

246. As a result of Roseland's violations of M.G.L. c. 186, § 15B(3)(b) as set forth herein, the Conleys and Class Members have suffered damages, including but not limited to, failure to receive amounts due and owing and loss of use and interest thereon.

**WHEREFORE**, the Conleys respectfully request that this Court enter Judgment against Roseland for its violations of the M.G.L. c. 186, § 15B(3)(b) and M.G.L. c. 93A and award, multiple damages to compensate the Conleys and the Class, and further, that the Court add thereto costs and attorneys' fees.

## COUNT XII
### The Conleys v. Roseland
### VIOLATION OF M.G.L. c. 186, § 15B(1)(b)
#### (Unlawful Demand of Move-In Fee)

247. The Conleys repeat and re-allege the allegations set forth above.

248. Roseland asserted a right to a Move-In Fee due at the inception of or before Ioana Conley's tenancy.

249. Roseland required that the Move-In Fee be paid by certified check, money order or another certified tender.

250. Obtaining a certified check, money order or other certified tender caused Ioana Conley to pay an amount of money in addition to (i) rent for the first full month of occupancy; (ii) rent for the last full month of occupancy calculated at the same rate as the first month; (iii) a security deposit equal to the first month's rent; or (iv) the purchase and installation cost for a key and lock.

251. Ioana Conley paid the Move-In Fee at the inception of or before her lease.

252. Roseland collected the Move-In Fee from Ioana Conley at the inception of, or before the execution of her lease.

253. Roseland was not lawfully permitted to collect a Move-In Fee from Ioana Conley in the manner set forth herein at the inception of or before her tenancy.

254. Roseland was not lawfully permitted to collect a Move-In Fee from Ioana Conley in the manner set forth herein at the inception of or before her tenancy pursuant to M.G.L. c. 186, § 15B(1)(b).

255. A Move-In Fee is not enumerated as a permissible charge to tenants or prospective tenants under M.G.L. c. 186, § 15B(1)(b).

256. Roseland has asserted a right to a Move-In Fee not enumerated in M.G.L. c. 186, § 15B(1)(b) allegedly due at the inception of or before other Class Members' tenancies.

257. Roseland has collected a Move-In Fee in the manner set forth herein not enumerated in M.G.L. c. 186, § 15B(1)(b) from Class Members at the inception of or before other Class Members' tenancies.

258. Class Members paid Roseland a Move-In Fee in the manner set forth herein not enumerated in M.G.L. c. 186, § 15B(1)(b) at the inception of or before their respective tenancies.

259. Roseland continues to knowingly and willfully require that tenants and/or prospective tenants pay an unlawful Move-In Fees before or at the inception of their tenancy.

260. Roseland's collection of a Move-In Fee not enumerated in M.G.L. c. 186, § 15B(1)(b) at the inception of or before Class Members' tenancies caused Class Members to act to their financial detriment.

261. As a result of Roseland's collection of a Move-In Fee in the manner set forth herein, the Conleys and the Class have suffered damages, including but not limited to financial detriment.

262. As a result of Roseland's collection of a Move-In Fee in the manner set forth herein, the Conleys and the Class have suffered damages, including but not limited to the amounts paid for cashier's checks and/or money orders and/or other charges incurred in connection with the payment of the Move-In Fee, interest and loss of use thereof.

WHEREFORE, the Conleys respectfully requests that this court enter Judgment against Roseland for its willful and knowing violations of M.G.L. c. 186, § 15B(1)(b), and further, that the Court award damages, costs and attorneys' fees to compensate the Conleys and the Class.

**COUNT XIII**
**The Conleys v. Roseland**
**Violation of M.G.L. c. 93A, §2**
**For violations of M.G.L. c. 186, § 15B(1)(b)**
**(Move-In Fee)**

263. The Conleys repeat and re-allege the allegations set forth above.

264. M.G.L. c. 186, § 15B(1)(b) prohibits a landlord, prior to or at the inception of a resident's tenancy, from requiring any tenant or prospective tenant, to pay any amount in excess of the enumerated categories in clauses (i) through (iv) thereof.

265. A Move-In Fee is not enumerated as a permissible charge to tenants or prospective tenants under M.G.L. c. 186, § 15B(1)(b).

266. Roseland knowingly and willfully required that Ioana Conley and Class Members pay an unlawful Move-In Fee before or at the inception of their tenancy

267. Roseland knowingly and willfully collected from Ioana Conley and Class Members the payment of an unlawful Move-In Fee before or at the inception of her tenancy.

268. Roseland's acts and omissions as set forth herein constitute violations of M.G.L. c. 186, § 15B(1)(b).

269. Roseland's failure to comply with the applicable provisions of M.G.L. c. 186, § 15B(1)(b) constitute an unfair and deceptive business practice.

270. Roseland's failure to comply with the applicable provisions of M.G.L. c. 186, § 15B(1)(b) constitute a violation of M.G.L. c. 93A, § 2.

271. Roseland's acts and practices as described herein were committed willfully, knowingly and/or in bad faith.

272. As a result of Roseland's violations of M.G.L. c. 186, § 15B(1)(b) and M.G.L. c. 93A, § 2 (as set forth herein), the Conleys and Class Members have been damaged.

273. Roseland's violations of M.G.L. c. 186, § 15B(1)(b) have caused the Conleys and Class Members harm, including financial harm.

274. As a result of Roseland's violations of M.G.L. c. 186, § 15B(1)(b), the Conleys and Class Members have suffered damages, including but not limited to, including but not limited to the amounts paid for cashier's checks and/or money orders and/or other charges incurred in connection with the payment of the Move-In Fee, interest and loss of use on the Move-In Fee.

**WHEREFORE**, the Conleys respectfully request that this Court enter Judgment against Roseland for its violations of the M.G.L. c. 185, § 15B(3)(b) and M.G.L. c. 93A, and further, that the Court award, multiple damages to compensate the Conleys and the Class, and that the Court add thereto costs and attorneys' fees.

**COUNT XIV**
**DECLARATORY JUDGMENT**

275. The Conleys repeat and re-allege the allegations set forth above.

276. There exists an actual controversy as to whether Defendants were/are permitted to bill for submetered gas in the manner set forth herein.

277. There exists an actual controversy as to whether Defendants were/are permitted to bill for submetered water or sewer charges in the manner set forth herein.

278. There exists an actual controversy as to whether Defendants are liable, pursuant to 105 CMR 410.354(c); 105 CMR 410.354(d); M.G.L. c. 186, § 22; 940 CMR 7.07(16); and/or M.G.L. c. 93A, § 2 for violations of any and all provisions of said laws.

279. There exists an actual controversy as to whether Roseland is liable, pursuant to M.G.L. c. 186, § 15B for violations of any and all provisions of said law.

280. The Conleys and the Class are entitled to a declaration that the submetered billing for gas services as set forth herein was unlawful.

281. The Conleys and the Class are entitled to a declaration that the submetered billing for water or sewage services as set forth herein was unlawful.

282. The Conleys and the Class are entitled to a declaration that Defendants have committed violations of: 105 CMR 410.354(c); 105 CMR 410 354(d); M.G.L. c. 186, § 22; 940 CMR 7.07(16); and/or M.G.L. c. 93A, § 2.

283. The Conleys and the Class are entitled to a declaration that Roseland has committed violations of M.G.L. c. 186, § 15B.

284. The Conleys and the Class are entitled to a declaration that the acts and practices of Defendants described herein constitute violations of the common-law principals of: negligent misrepresentation and/or unjust enrichment.

285. The Conleys and the Class are entitled to a declaration that Defendants' acts and omissions set forth herein were unfair and deceptive.

286. The Conleys and the Class are entitled to a declaration that Defendants' acts and omissions set forth herein were committed willfully, knowingly and/or in bad faith.

   **WHEREFORE**, the Conleys and the Class demand that this Honorable Court declare that Defendants may not charge or collect monies for submetered gas services and submetered sewer and water services in the manner set forth herein. Further, the Conleys and the Class demand that this Honorable Court declare that Roseland may not retain security deposits without following the mandates of M.G.L. c. 186, § 15B. Further, the Conleys and the Class demand that this Honorable Court declare that Roseland may not charge or collect monies for a Move-In Fee in the manner set forth herein.

**PRAYERS FOR RELIEF**

   **WHEREFORE**, the Conleys, on behalf of themselves and all others similarly situated, demand judgment against Defendants as follows:

A.   An order determining that this action is a proper class action and certifying the Conleys as representatives of the putative class;

B.   An order appointing the Conleys' counsel as competent legal representatives of the putative class in this action;

37

C.   An order determining that Defendants' acts and omissions as described herein constitute violations of any or all of the following statutes and regulations: 105 CMR 410.354(c); 105 CMR 410.354(d); M.G.L. c. 186, § 22; 940 CMR 7.07(16); and/or M.G.L. c. 93A.

D.   An order determining that Roseland's acts and omissions as described herein constitute violations M.G.L. c. 186, § 15B;

E.   An order determining that the acts of Defendants set forth herein were committed willfully and/or knowingly and/or in bad faith;

F.   An order determining that the acts of Defendants as described above constitute any or all of the following: negligent misrepresentation; and unjust enrichment;

G.   An order awarding the Conleys and the Class damages, together with interest, costs, and reasonable attorneys' fees;

H.   An order determining the appropriate statute of limitations applicable to this action;

I.   An order permanently enjoining Defendants from continuing the unlawful practices which are the subject matter of this action;

J.   An order awarding the Conleys an appropriate stipend for acting as Class representative; and

K.   An order awarding the Conleys and the Class any further relief as may be just and appropriate.

## JURY DEMAND

The Conleys, on behalf of themselves and all other similarly situated individuals, hereby demands trial by jury on all counts of this Complaint, which are triable by a jury.

Respectfully submitted,                          DATED:  March 7, 2018
Plaintiffs, by their Attorneys,


_Robert E. Mazow (ML)_

Robert E. Mazow, Esq.
BBO # 567507
rmazow@forrestlamothe.com
Michael C. Forrest, Esq.
BBO # 681401
mforrest@forrestlamothe.com
David J. Relethford, Esq.
BBO# 691223
drelethford@forrestlamothe.com
Forrest, LaMothe, Mazow,
McCullough, Yasi & Yasi, P.C.
2 Salem Green, Suite 2
Salem, MA  01970
(617) 231-7829



## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _1781-CV-03719_

IONA CONLEY and ALEXANDER
CONLEY, on behalf of
themselves and all other PLAINTIFFS(S),
similarly situated
V.

ROSELAND RESIDENTIAL TRUST DEFENDANT(S)
and NWP SERVICES CORPORATION



### SUMMONS

THIS SUMMONS IS DIRECTED TO ROSELAND RESIDENTIAL TRUST . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the Middlesex Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, Middlesex Superior. Court,
200 Trade Center
Woburn, MA (address), by mail or in person, **AND**

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following
address: _2 Salem Green, Salem, MA 01970_ .

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer
must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
based on the same facts or transaction described in the Complaint, then you must include those claims
in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
Answer or in a written demand for a jury trial that you must send to the other side and file with the
court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
**"Motion to Dismiss,"** if you believe that the complaint in legally invalid or legally insufficient. A Motion
to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
you are filing a Motion to Dismiss, you must also comply with the filing procedures for **"Civil Motions"**
described in the rules of the Court in which the complaint was filed, available at
www.mass.gov.courts/case-legal-res/rules of court.

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

MAR 21 2018

CLERK

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required Information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on ___March 7___ , 20 18 .

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS



**Middlesex Sheriff's Office** · Civil Division, P.O. Box 827, Framingham, MA 01701 · (508) 872-3110

*Middlesex, ss.*

March 12, 2018

I hereby certify and return that on 3/12/2018 at 9:18 AM I served a true and attested copy of the SUMMONS AND FIRST AMENDED COMPLAINT, EXHIBITS, CIVIL ACTION COVER SHEET in this action in the following manner: To wit, by delivering in hand to MARIA SPENCER, agent, person in charge at the time of service for ROSELAND RESIDENTIAL TRUST, at 23 OVERLOOK RIDGE Drive Malden, MA 02148 . Fees: Attest ($5.00) Basic Service Fee ($30.00) Postage and Handling ($1.00) Travel ($5.42) Conveyance ($1.50) Total: $42.62

Richard Moran
*Deputy Sheriff*

, 20___